# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 15-0176-WS |
| ) | |
| MICHAEL RAY O'NEIL, ) | |
| ) | |
| Defendant. ) | |

## ORDER

The defendant challenges his designation as a career offender. He argues that his Washington conviction for second-degree murder is not a crime of violence for purposes of U.S.S.G. §§ 4B1.1 and 4B1.2. (Docs. 64, 92). Because the defendant has only two felony convictions supporting his designation as a career offender, (Doc. 61 at 6), he cannot be sentenced as a career offender if his argument succeeds. The Court therefore directed the government to respond to the defendant's argument. (Doc. 93). The government has done so. (Doc. 100). The parties request resolution of the issue prior to sentencing.

In order to qualify as a career offender under the guidelines, a defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The definition of "crime of violence" is provided in Section 4B1.2. The current version of Section 4B1.2 offers two ways of establishing that a felony is a crime of violence: the elements clause and the enumerated offenses clause.[1]

Murder is listed as an enumerated offense under the 2016 version of Section 4B1.2. "Where, as here, the Guidelines specifically designate a certain offense as a 'crime of violence,' we compare the elements of the crime of conviction to the generic form of the offense as defined by the States, learned treatises, and the Model Penal Code." *United States v. Lockley*, 632 F.3d

---

[1] "The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced," unless it determines that doing so "would violate the *ex post facto* clause of the United States Constitution." U.S.S.G. § 1B1.11(a), (b)(1). The government insists that the Court should utilize the 2016 manual. (Doc. 100 at 1). Because the Court perceives no substantial risk of a higher sentence from employing the 2016 manual rather than the 2014 manual in effect at the time of the instant offense, *see Peugh v. United States*, 569 U.S. 530 544, 550 (2013); *United States v. Wetheraid*, 636 F.3d 1315, 1322 (11th Cir. 2011), the Court accepts the government's position.

1238, 1242 (11th Cir. 2011). If the statute of conviction is no broader than the generic offense, the conviction can serve as a predicate offense for career offender status. *Id*. This "categorical" approach may be modified when the same statute lists elements in the alternative and thereby defines multiple crimes; in that situation, the Court may examine certain documents, including the charging documents, to determine which of these multiple crimes was the one of which the defendant was convicted. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). Except for this limited purpose, the Court does not consider the actual or alleged facts underlying the defendant's conviction. *E.g., Sykes v. United States*, 564 U.S. 1, 7 (2011), *overruled in part on other grounds, Johnson v. United States*, 135 S. Ct. 2551 (2015); *United States v. Young*, 527 F.3d 1274, 1277 (11th Cir. 2008).

The defendant was convicted of second-degree murder under Section 9A.32.050 of the Revised Code of Washington. Under this statute, second-degree murder may be committed either by an intentional killing without premeditation or by killing a person in certain connection with a felony. The defendant asserts that he was convicted of felony murder, (Doc. 64 at 2; Doc. 92 at 5), and the amended information presented by the government, (Doc. 100-1 at 1), bears this out.

It appears that the Eleventh Circuit has not identified the elements of generic murder or generic felony murder. The government, (Doc. 100 at 3), urges the Court to employ the generic definition of felony murder articulated by the Third Circuit in *United States v. Marrero*, 743 F.3d 389, 400 (3rd Cir. 2014). Drawing on the Model Penal Code, Black's Law Dictionary and state-law definitions, the *Marrero* Court "h[e]ld that murder is generically defined as causing the death of another person either intentionally, during the commission of a dangerous felony, or through conduct evincing reckless and depraved indifference to serious dangers posed to human life." *Id*. at 401. The Third Circuit's generic definition of felony murder thus would be "causing the death of another person … during the commission of a dangerous felony."[2]

Subject to certain defenses not relevant here, Section 9A.32.050, as it read at the time of the defendant's offense and conviction, defined second-degree felony murder as occurring when the defendant "commits or attempts to commit any felony other than those enumerated in RCW

---

[2] This part of the *Marrero* definition is apparently dicta, since the case hinged on its third prong. 743 F.3d at 401.

9A32.030(1)(c) and, in the course of and in furtherance of such crime or in immediate flight therefrom, he or another participant causes the death of a person other than one of the participants."[3] The government acknowledges that its generic definition requires that the underlying felony be a "dangerous" one,[4] and it recognizes that Section 9A.32.050 includes no such qualifier; instead, the crime extends to "any felony," including non-dangerous ones. (Doc. 100 at 4). The government thus concedes that Section 9A.32.050 reaches conduct beyond that covered by its generic definition of felony murder and therefore fails to satisfy the categorical or modified categorical test.[5]

To solve this problem, the government turns to *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007). According to the government, *Duenas-Alvarez* stands for the proposition that, even though a state statute sweeps more broadly than the generic offense, the enhancement applies

---

[3] The defendant's offense occurred in 1995, his conviction in 1996. In 2003, the Washington Legislature amended Section 9A.32.050, in response to a Washington Supreme Court decision, to insert the phrase, "including assault," after the words, "any felony." The only other change to the statute since 1996 is the use of gender-neutral language.

[4] *See also United States v. Godoy-Castaneda*, 614 Fed. Appx. 768, 770 (5th Cir. 2015) (citing a leading treatise for the proposition that, "for felony murder, the felony attempted or committed by the defendant must be dangerous to life") (internal quotes omitted).

The Model Penal Code indicates that felony murder lies only when the underlying felony is "robbery, rape or deviate sexual intercourse by force or threat of force, arson, burglary, kidnapping or felonious escape." *Marrero*, 743 F.3d at 400. Such crimes would seem clearly to constitute dangerous felonies. Most of these crimes are listed in Section 9A.32.030(1)(c), which defines the crime of first-degree felony murder.

[5] The Court assumes without deciding that the broad scope of Section 9A.32.050 could be effectively cabined, for purposes of categorical analysis, by an authoritative judicial decision restricting its scope to dangerous felonies as under the generic definition of felony murder. The government, however, neither makes such an argument nor points to any such authoritative ruling. The Court notes, moreover, the Supreme Court of Washington's observation that, in response to the expansion of felony murder over time as more crimes became felonies, states required that the felony "be dangerous to life" and that, as part of this trend, Washington limited first-degree felony murder to crimes that were generally felonies at common law, while "the second degree felony murder statute is not similarly restricted." *In re: Personal Restraint of Andress*, 56 P.3d 981, 983 (Wash. 2002). *Andress* does not cabin Section 9A.32.050 but rather suggests obliquely that felonies within the scope of the statute need not be dangerous. The government's failure to assert a judicial limitation on the scope of Section 9A.32.050 obviates the Court's further consideration of the matter.

unless the defendant identifies a case in which the state courts have in fact applied the statute outside the generic context. Because the defendant (who has had no opportunity to reply to the government's brief) has not identified any such instance, the government concludes the enhancement applies. (Doc. 100 at 4). The Court is unpersuaded.

The *Duenas-Alvarez* Court employed the categorical approach to determine whether the California crime of aiding and abetting a theft offense constituted a "theft offense" under the Immigration and Nationality Act. 549 U.S. at 185. The defendant endeavored to show that the state law "might" in certain circumstances extend beyond the generic offense. *Id*. at 191. The Court distinguished the three examples the defendant offered, then concluded as follows:

> Moreover, in our view, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Id*. at 193. The government offers this quote from *Duenas-Alvarez* but nothing more. The Court has located only two Eleventh Circuit cases citing *Duenas-Alvarez* in a guidelines context, and neither of them indicates that it requires a historical instance of non-generic prosecution in all cases.

In *United States v. Morales-Alonso*, 878 F.3d 1311 (11th Cir. 2016), the question was whether the Georgia crime of aggravated assault constituted "aggravated assault" and thus an enumerated crime of violence under Section 2L1.2(b)(1)(A)(ii) and application note 1(B)(iii). To show the Georgia statute was broader than the generic offense, the defendant offered a hypothetical in which, when a golfer ignores another golfer down the fairway, his shot strikes the victim and causes serious injury. The Court cited *Duenas-Alvarez*, but only for the proposition that there must be a realistic probability of the state applying its statute beyond the parameters of the generic offense. The Court did not say that a hypothetical cannot show this probability and that an actual, historical case is always required; instead, it rejected the hypothetical as unrealistic. *Id*. at 1319-20.

In *United States v. Dixon*, 874 F.3d 678 (11th Cir. 2017), the question was whether the Florida crime of domestic battery by strangulation constituted a crime of violence for purposes of

Section 2K2.1(a)(2) under the elements clause of Section 4B1.2(a)(1), which was made applicable by application note 1. A categorical approach is used under the elements clause, with the inquiry being whether the state crime necessarily involves the actual, attempted or threatened use of violent physical force against another person. *Id*. at 680. The defendant offered hypotheticals which, he argued, showed the statute could be violated without violent force. The Court cited *Duenas-Alvarez*, but again only for the requirement of a realistic probability the state would apply its statute outside the generic offense's boundaries. Again, the Court did not say that a previous application of the statute in a non-generic context is required but only that the defendant's hypotheticals did not show a realistic probability that Florida would apply the statute in such situations. *Id*. at 681-82.

From these authorities and others, the Court concludes that an historical case applying a state statute outside the generic context is required only if it does not otherwise appear that there is a realistic probability of the statute being applied beyond the generic offense's parameters. *See, e.g., United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) (when a state statute on its face defines a crime more broadly than the generic definition, "no legal imagination … is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime," and *Duenas-Alvarez* is not implicated). This is such a case.

Unlike in *Dixon* and *Morales-Alonso*, the Court is not faced with contorted, implausible hypotheticals as to how Section 9A.32.050 could apply to a non-dangerous felony. The government protests that it is "difficult to imagine" how a defendant "could be charged with felony murder for causing a death in furtherance of a non-dangerous felony." (Doc. 100 at 5). This is less than obvious, since "in furtherance" does not mean the death furthered the accomplishment of the felony but only that "the death was sufficiently close in time and place to the arson to be part of the res gestae of that felony." *Bowman v. State*, 172 P.3d 681, 683-84 (Wash. 2007) (internal quotes omitted). Moreover, the necessary causal connection between felony and death can be satisfied either when the death occurs "in the course of and in furtherance of such crime" or "in immediate flight therefrom." Under either alternative, any non-dangerous felony will support a felony murder prosecution so long as the defendant, caught in the act, kills someone on the spot or in immediate flight therefrom. This would appear to

include a range of ordinarily non-dangerous felonies.[6] While a state might as a matter of policy elect not to prosecute such killings as felony murder, the government fails to explain how such a prosecution is not realistic given a statute as broad as it concedes Section 9A.32.050 to be.

Because the government acknowledges that Washington's second-degree felony murder statute extends to non-dangerous felonies, and because the government has failed to rebut the realistic probability raised by that construction that the state will apply the statute in non-generic situations, the Court cannot conclude that the defendant's conviction is a crime of violence under the enumerated offenses clause of Section 4B1.2.[7]

A felony may also be a "crime of violence" under Section 4B1.1 if it "has as an element the use, attempted use, or threatened use of physical force against the person of another …." U.S.S.G. § 4B1.2(a)(1). The defendant argues that felony murder under Washington law does not satisfy the elements clause because it does not require an intentional or even reckless use of physical force. (Doc. 64 at 2; Doc. 92 at 2, 6). The defendant relies on *Leocal v. Ashcroft*, 543 U.S. 1 (2004).

In *Leocal*, the Supreme Court construed 18 U.S.C. § 16(a), which defines "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of

---

[6] An incomplete list of such felonies would include: theft of services, Wash. Rev. Code §§ 9A.56.030, 9A.56.040; theft of a public record, *id*.; theft of rental, leased, lease-purchased or loaned property, *id*. § 9A.56.096; possession of stolen property, *id*. §§ 9A.56.150, 160; unlawful factoring of credit card or payment card transactions, *id*. § 9A.56.290; unlawful possession or production of payment instruments, *id*. § 9A.56.320; mail theft, *id*. § 9A.56.370; possession of stolen mail, *id*. § 9A.56.380; obtaining information on another's identification document, *id*. § 9A.58.020; forgery, *id*. § 9A.60.020; and obtaining a signature by deception or duress. *Id*. § 9A.60.030.

[7] Unraveling another jurisdiction's law is always problematic, and the Court is under no illusion that it has perfectly captured the nuances of Washington's felony murder law. Instead, the Court rests on the proposition that it is the government's burden to establish that a sentence enhancement is warranted, *e.g., United States v. Young*, 527 F.3d 1274, 1277 (11th Cir. 2008), and on its conviction that the government's thin argument fails to carry that burden.

Because the government has failed to show that Washington's felony murder offense does not extend beyond the generic offense, or that there is no realistic probability that Washington would apply the statute outside the parameters of the generic offense, it is unnecessary for the Court to consider the defendant's argument that Section 9A.32.050 is broader than the generic offense in that it applies to deaths in flight from the underlying felony. (Doc. 92 at 4).

6

physical force against the person or property of another." The Court construed this phrase to require "a higher degree of intent than negligent or merely accidental conduct." 543 U.S. at 9. As a result, a statute that "do[es] not require any mental state with respect to the use of force against another person, thus reaching individuals who were negligent or less," cannot satisfy the elements test of Section 16(a). 543 U.S. at 13. The Eleventh Circuit has applied *Leocal* in the guidelines context. *United States v. Palomino Garcia*, 606 F.3d 1317, 1334-36 (11th Cir. 2010) (Section 2L1.2).

Under Washington law, "no mental state element is necessary to commit felony murder …." *State v. Lucky*, 912 P.2d 483, 488 (Wash. 1996); *accord State v. Frazier*, 661 P.2d 126, 132 (Wash. 1983); *see also Bowman*, 172 P.3d at 685 ("[The traditional purpose of the felony murder rule [is] punishing accidental, negligent, or reckless killings that occur in the course of a distinct felony."). It therefore does not seem possible that the defendant's felony murder conviction could satisfy the elements clause of Section 4B1.2. The government by its decision not to respond to the defendant's argument effectively concedes the point.

For the reasons set forth above, the Court concludes that the defendant's conviction for second-degree felony murder under Washington is not a crime of violence for purposes of Section 4B1.1. The defendant therefore cannot be sentenced as a career offender.

DONE and ORDERED this 26th day of February, 2018.

                                                  s/WILLIAM H. STEELE
                                                  UNITED STATES DISTRICT JUDGE